OPINION. Disney, Judge: In the taxable year 1943 the petitioners sold certain securities. Were the profits taxable as ordinary income, or at capital gain rates? The securities had, earlier at least, belonged to a partnership composed of the petitioners. The answer here depends upon the view taken as to what happened to that partnership and the securities. That partnership had been dealing in the securities, and inventoried them. No permission was secured from the Commissioner to change from the inventory method. Therefore, if the partnership continued to own the securities until they were sold in 1943, they would not be capital assets, within the text of sections 117 (a) (1) and 22 (c) of the Internal Revenue Code,[1] and Regulations 111, section 29.22 (c)-5,[2] which is not challenged as not being within the statute. In our opinion, the securities sold clearly did remain the property of the partnership. The burden is upon the petitioner to show otherwise. No attempt was made to show dissolution of the partnership. Evidence was introduced that on or about June 30, 1942, a new partnership agreement entered into was between the petitioners and one Warne, formerly an employee of the old partnership, because Hewitt entered the military service of the United States, and a partner was necessary to represent him as alternate in the Stock Exchange, of which he was a member. The new partnership, composed of Hewitt, Lauder-dale, and Warne, dealt iii securities, including those of the same companies formerly dealt in by the partnership between Hewitt and Lauderdale. The securities held by the “old partnership” (including those later sold and here in question) after June 30,1942, were held by a Stock Exchange house in an account labeled “old accounts,” which referred to the old partnership. There was purchase and sale in that account, but much smaller in amount than was conducted by the new partnership in securities in which it dealt. The securities in the “old accounts” were not distributed to Hewitt and Lauderdale. They consisted of 20,140 shares. All but 3,100, together with later purchases of 1,800 shares, were sold prior to December 31, 1943, and the 3,100 remaining were sold in 1944. It is apparent that the petitioners did not regard the old partnership as terminated on June 30,1942, for a partnership return was filed for 1942, reflecting income of both the old and the new partnerships, that is, for the entire year 1942, with no suggestion of dissolution of the old partnership, but, on the contrary, a statement that the partnership reporting was formed May 31,1939, which was the date of inception of the old partnership. Only one partnership return was filed for 1942. For 1943 two partnership returns were filed, and both showed the date of formation as May 31,1939. One of the 1943 returns showed Hewitt and Lauderdale as the partners. The other return showed Hewitt, Lauderdale, and Warne as partners. The latter showed a net income of approximately $36,000, as against about $22,000 for the other return by the Hewitt-Lauderdale partnership. To us it is apparent from all this that Hewitt and Lauderdale in the taxable year, and in fact at all times after June 30,1942, regarded themselves as a partnership as they were before June 30,1942, and separate from that in which Warne participated. At trial it was suggested by counsel for petitioner that the matter here is one of intention. The intention as to continuation of the old partnership is plain. It was not dissolved. Its property was not distributed. Therefore, that partnership continued to report as such, and, since it did not secure permission to change from the inventory method, the securities so inventoried, including those sold, can not be viewed as capital assets, in the face of the statute saying assets properly includible in inventory are not. The petitioners urge that the partners considered themselves only as investors after June 30,1942, as to the “old accounts,” and cite Vaughan v. Commissioner, 85 Fed. (2d) 497; certiorari denied, 299 U. S. 173. But that case is distinguishable. Here the same entity continued, to a considerable extent, to buy and sell, and to report as such, without permission to change from the inventory method, while in the Vaughan case the former activity in the stocks involved passed from Vaughan to a partnership formed. A mere desire by the partners to regard certain securities as no longer inventory, but as investments, and themselves as no longer dealers, can not suffice to meet the statute. There is ample and sound reason for the requirement that permission be given before change from the inventory method. Stokes v. Rothensies, 61 Fed. Supp. 444; affd., 154 Fed. (2d) 1022. The statutes and regulations require the conclusion here that the stocks sold were not capital assets, and we therefore hold that the Commissioner did not err in taxing the profits from their sales as ordinary income. Decisions will he entered for the respondent. SEC. 117. CAPITAL GAINS AND LOSSES. (a)Definitions. — As used in this chapter— (1) Capital assets. — The term “capital assets” means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held bj the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *. SEC. 22. GROSS INCOME. ******* (c) Inventories. — Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income. Sec. 29.22 (c)-5. Inventories by Dealers in Securities. — A dealer in securities who in his books of account regularly inventories unsold securities on hand either— (a) At cost, (b) At cost or market, whichever is lower, or (c) At market value, may make his return upon the basis upon which his accounts are kept; provided that a description of the method employed shall be included in or attached to the return, that all the securities must be inventoried by the same method, and that such method must be adhered to in subsequent years, unless another method he authorized hy the Commis- ' sioner * * *. [Italics supplied.]